# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

CARLOS TEJEDA,

    Petitioner,

v.

T. JOHNS, Warden,

    Respondent.

CIVIL ACTION NO.: 5:15-cv-2

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Carlos Tejeda ("Tejeda"), who is currently housed at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response. (Doc. 9.) Tejeda filed a Reply to Respondent's Response. (Doc. 11.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Tejeda's Petition, **CLOSE** this case, and **DENY** Tejeda *in forma pauperis* status on appeal.

## BACKGROUND

Tejeda was convicted in the Middle District of Florida of importing 100 grams or more of heroin, in violation of 21 U.S.C. §§ 952 and 969(b)(2)(A), and possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(i), and was sentenced to 100 months' imprisonment. (Doc. 9-1, pp. 17–18.) He has a projected release date of February 13, 2016, via good conduct release. (Id.)

## DISCUSSION

Tejeda was issued an incident report for violating Code 297 of the disciplinary regulations, which prohibits telephone usage that circumvents prison staff's ability to monitor the frequency of telephone use, content of the phone call, or the number called. (Id. at p. 28.) The incident report alleged that Tejeda permitted another inmate to make phone calls using Tejeda's phone account. (Id.) Tejeda was provided a copy of the incident report on December 1, 2014. (Id. at p. 4.) The investigator concluded that sufficient evidence existed to support Tejeda's charge for violating Code 297, and the incident report was forwarded to the Unit Disciplinary Committee ("UDC") for a hearing. (Id. at p. 5.)

On December 5, 2014, the UDC conducted a hearing, during which Tejeda appeared and provided a brief statement. (Id.) Based on the severity of the allegation, the UDC referred the matter to a Discipline Hearing Officer ("DHO"). (Id.) Tejeda received notification of the DHO hearing and a notice of his rights at this hearing. Tejeda opted not to call any witnesses or make use of his right to staff representation at that time. (Id.) At that hearing, DHO Perry reduced Tejeda's charge to a lesser Code 397 violation and recommended Tejeda be sanctioned with two months' loss of commissary and phone privileges. (Id. at p. 6.) DHO Perry delivered a copy of his report to Tejeda on December 29, 2014, and advised him of his right to appeal the DHO Hearing via the administrative remedy procedure. (Id. at p. 7.)

In his Petition, Tejeda contends the hearing was improperly conducted by an employee of the GEO Group, Inc.,[1] in contravention of Bureau of Prisons ("BOP") policy. (Doc. 1, p. 4.) Tejeda questions the authority of a non-BOP employee to issue sanctions and, as a result, the validity of the disciplinary process. (Id.) Tejeda seeks to have a new hearing before a BOP

---

[1] The BOP contracts with GEO Group, Inc., to house low security criminal alien inmates at D. Ray James Correctional Facility. (Doc. 9-1, p. 2.)

2

officer. (Id.) Respondent contends Tejeda did not exhaust his administrative remedies prior to filing his Petition. (Doc. 9, p. 7.) In addition, Respondent avers Tejeda cannot bring his claim under Section 2241. (Id. at p. 2.)

**I.      Whether Tejeda May Proceed under Section 2241**

Respondent contends that Tejeda's allegations concern the conditions of his confinement, as opposed to the execution or duration of his sentence. (Id. at p. 2.) Respondent argues that Section 2241 is, therefore, not the proper vehicle to bring his allegations and that Tejeda's Petition must be dismissed as a result. (Id.)

This Court has jurisdiction to issue writs of habeas corpus to federal prisoners who are "in custody in violation of the constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal prisoner may use a Section 2241 petition to challenge the manner of execution of his sentence when his challenge implicates the fact or duration of that sentence. See, e.g., Bishop v. Reno, 210 F.3d 1295, 1304 n.14 (11th Cir. 2000) (stating that BOP's "administration of service credits . . . involves the execution rather than the imposition of sentence; thus, this function of BOP is a matter for habeas corpus review in district court"). In general, however, the proper vehicle for a prisoner to challenge his conditions of confinement is a civil rights, rather than a habeas corpus, action. McKinnis v. Mosely, 693 F.2d 1054, 1056–57 (11th Cir. 1982) (citing Johnson v. Hardy, 601 F.2d 172, 174 (5th Cir. 1979), for the proposition that "any challenge to the fact or duration of a prisoner's confinement is properly treated as a habeas corpus matter, whereas challenges to conditions of confinement may proceed" as civil rights actions, and concluding that prisoner's challenge to "summary suspension of his wife's visiting rights" was properly brought as civil rights action); see also Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999) (noting that term "'conditions of confinement' . . . quite simply

3

encompasses all conditions under which a prisoner is confined for his term of imprisonment," including "terms of disciplinary or administrative segregation such as keeplock or solitary confinement, as well as more general conditions affecting a prisoner's quality of life," and stating that "any deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement").

Despite Tejada's characterization of his pleading as one made pursuant to Section 2241, the contentions he sets forth are claims that are ordinarily asserted under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). In general, the distinction between claims which may be brought under Bivens and those which must be brought as habeas petitions is reasonably well settled. Claims in which federal prisoners assert that they are being subjected to unconstitutional punishment not imposed as part of their sentence, such as, for example, being denied the right to practice their religion or to be free from cruel and unusual punishment, are Bivens actions, not habeas actions. See e.g., Farmer v. Brennan, 511 U.S. 825 (1994). Habeas actions, in contrast, are those that explicitly or by necessary implication challenge a prisoner's conviction or the sentence imposed on him by (or under the administrative system implementing the judgment of) a court. Thus, for example, when a prisoner makes a claim that, if successful, could shorten or invalidate his term of imprisonment, the claim must be brought as a habeas petition, not as a Bivens claim. See e.g., Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994).[2]

In this action, Tejeda seeks to challenge the conditions of his confinement—specifically, his loss of commissary and phone privileges—as opposed to the fact or duration of that

---

[2] As Respondent concedes, "It is well established that a challenge to a disciplinary action that resulted in the loss of good time credits is actionable under § 2241 because it affects the duration of the petitioner's sentence." (Doc. 9, p. 6.) However, as Respondent goes on to note, Tejada did not lose any good conduct time or receive any other punishment that affected the duration of his sentence.

4

confinement. As a result, Tejeda may not properly proceed under Section 2241. See Richmond v. Scibana, 387 F.3d 602, 605–06 (7th Cir. 2004) (concluding that federal prisoner could not proceed under § 2241 in action that did not challenge fact or duration of his confinement); see also Hutcherson v. Riley, 468 F.3d 750, 754 (11th Cir. 2006) (stating that federal habeas corpus petition and civil rights action "are mutually exclusive" avenues of relief and holding that challenge to validity of conviction and sentence could not be brought as civil rights claim because "if a claim can be raised in a federal habeas petition, that same claim cannot be raised in a separate § 1983 civil rights action"); accord Thomas v. McDonough, 228 F. App'x 931, 931–32 (11th Cir. 2007) (citing Hutcherson for proposition that habeas petition and civil rights action "are mutually exclusive," and holding that challenge to parole eligibility procedure could not be brought in habeas petition because it is "cognizable under § 1983"). Put simply, Tejada cannot challenge the conditions of his confinement through a Section 2241 action.

**II.     Whether the Court Should Construe Tejada's Action as a <u>Bivens</u> Complaint**

Federal courts may "ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." Castro v. United States, 540 U.S. 375, 381 (2003). We may employ such recharacterization "to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis." Id. at 381-82 (internal citations omitted). However, recharacterizing Tejada's Petition as a Bivens complaint would be futile.

The United States Supreme Court has held that a federal prisoner cannot bring a Bivens claim against employees of a privately operated federal prison when state law authorizes

5

adequate alternative damages actions.[3] Minneci v. Pollard, ___ U.S. ___, 132 S. Ct. 617 (Jan. 10, 2012). The Court stated that "in the case of a privately employed defendant, state tort law provides an 'alternative, existing process' capable of protecting the constitutional interests at stake." Id. at ___, 132 S. Ct. at 623 (quoting Wilkie v. Robbins, 551 U.S. 537, 559 (2007)) (declining to extend Bivens liability to allow a landowner to pursue a private action against employees of the Bureau of Land Development).

D. Ray James Correctional Facility is a private entity that operates under a contract with the Bureau of Prisons. The employees of D. Ray James, including Defendants, are employees of The GEO Group, Inc., a private entity. Like the plaintiffs in Minneci and Alba, so long as Plaintiff has adequate state law remedies available to him, he may not maintain a cause of action pursuant to Bivens against The GEO Group, Inc., or its employees (such as Defendants) because The GEO Group, Inc., and its employees are private parties. Thus, Plaintiff's remedy, if any, against Defendants lies in state court.[4]

## III. Whether Tejeda Exhausted his Administrative Remedies

Respondent further asserts that, even were Tejeda's claims properly brought under Section 2241 Petition, his claims nevertheless are subject to dismissal because he failed to exhaust his administrative remedies before he filed his Petition. (Doc. 9, p. 7.)

### A. Legal Requirements for Exhaustion

It is well established that federal prisoners are required to exhaust their administrative remedies before filing a habeas corpus petition under Section 2241 even if exhaustion is not

---

[3] It should be noted that in the Eleventh Circuit such a claim has been foreclosed since 2008. See Alba v. Montford, 517 F.3d 1249 (11th Cir. 2008) (declining to extend Bivens to cover a claim for deliberate indifference to medical needs against Corrections Corporation of America, a private facility under contract with the Bureau of Prisons, and its employees).

[4] The Court offers no opinion as to the efficacy of such a pursuit.

6

explicitly mandated by the statute. See Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015). However, the Eleventh Circuit has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago–Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, No. 5–11471, 2015 WL 7280966, at * 1 (11th Cir. Nov. 18, 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Fleming, 2015 WL 7280966, at *1 (citing Santiago–Lugo, 785 F.3d at 475).

In Porter v. Nussle, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. 534 U.S. 516, 523 (2002). The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 548 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

The requirement that a prisoner exhaust his remedies "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford, 548 U.S. at 93.

### B. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve

8

the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C. Analysis of Plaintiff's Efforts at Exhaustion

In his Petition, Tejada indicated he did not pursue any administrative remedies. (Doc. 1, p. 2.) However, in his Reply, he contends he did exhaust such remedies and provides documentation to that effect. (Doc. 11.) Thus, in an abundance of caution, the Court will proceed to the second Turner step and make specific factual findings pertinent to the exhaustion question.

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures. (Doc. 9, p. 7.) This involves an attempt at informal resolution, which, if unsuccessful, is followed by a formal complaint via a Step 1 administrative remedy form. (Id.) If the inmate is not satisfied with the resolution of the formal complaint, the inmate may appeal to the BOP's Administrator of the Privatization Management Branch, so long as the appeal involves BOP-related matters.[5] (Id. at p. 8.) If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel. (Id.) If an inmate files an administrative remedy concerning a BOP-related matter, the administrative remedies will be recorded in the BOP's SENTRY computer database. (Doc. 9-1, p. 10.)

---

[5] Examples of BOP-related matters which must be appealed through the BOP are: sentence computations, reduction in sentences, and removal or disallowance of good conduct time. (Doc. 9, p. 7.)

9

The evidence before the Court reveals that Tejeda filed a formal complaint via a Step 2 administrative remedy form. (Doc. 11, p. 4.) However, Tejeda did not file an appeal of Respondent's decision to the BOP's Administrator of the Privatization Management Branch regarding the disciplinary sanctions he received. Therefore, it is apparent Tejeda failed to exhaust his administrative remedies prior to filing his Petition. Consequently, Tejeda's Petition is also subject to dismissal on these grounds.

## III.    Leave to Appeal *In Forma Pauperis*

The Court should also deny Tejeda leave to appeal *in forma pauperis*. Though Tejeda has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Tejeda's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** Tejeda's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Tejeda *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Tejeda and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 23rd day of June, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA